UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

TOMIE J. LEE,                          )
                                       )
          Plaintiff,                   )
                                       )     No.  4:06CV00201 FRB
                                       )
v.                                     )
                                       )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,[1]    )
                                       )
          Defendant.                   )


<u>**MEMORANDUM AND ORDER**</u>


          This matter is on appeal for review of an adverse ruling
by the Social Security Administration.   All matters are pending
before the undersigned United States Magistrate Judge, with consent
of the parties, pursuant to 28 U.S.C. § 636(c).

**I.  Procedural Background**

          On October 29, 2003, Tomie J. Lee ("plaintiff") applied
for a Period of Disability and Disability Insurance Benefits under
Title II of the Social Security Act, and a concurrent claim for
Title XVI Supplemental Security Income benefits.   (Tr. 165-67.)
Plaintiff alleged disability as of March 15, 2003, due to poor

---

[1]Michael J. Astrue became the Commissioner of Social Security on
February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, he shall be substituted for Acting Commissioner Linda S. McMahon,
and former Commissioner Jo Anne B. Barnhart, as defendant in this suit.  No
further action need be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

eyesight, chest pain, shortness of breath, impaired cognitive functioning, and back pain. Id. Plaintiff's initial application was denied on January 9, 2004. (Tr. 133-37.) Plaintiff filed a request for a hearing before an administrative law judge ("ALJ") on September 14, 2004.[2] (Tr. 92; 132.) On April 6, 2005, a hearing was held before an ALJ, during which plaintiff was represented by attorney Traci Severs. (Tr. 27-54.) On July 24, 2005, the ALJ issued her decision denying plaintiff's application for benefits. (Tr. 11-23.)

On July 29, 2005, plaintiff filed a Request for Review of Hearing Decision with defendant Agency's Appeals Council. (Tr. 7.) The Appeals Council denied plaintiff's request for review on January 27, 2006. (Tr. 4-6.) The ALJ's decision thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

**II.     Evidence Before the ALJ**

A.     Plaintiff's Testimony

At the hearing on April 6, 2005, plaintiff responded to questioning from his attorney and the ALJ. (Tr. 28-69.) Plaintiff completed the eleventh grade, and never obtained a GED or vocational training. (Tr. 29-30.) Plaintiff attended special education classes in high school, but testified that he was good in math and science. (Tr. 36-37.) He never served in the military.

---

[2]Plaintiff request for a hearing was filed out of time, but because he provided good cause for his untimeliness, his request was granted and a hearing was conducted on April 6, 2005. (Tr. 11; 127-28.)

(Tr. 34.) Plaintiff last drove a car four years ago, and has let his driver's license lapse after allegedly being told that his vision was poor. (Tr. 41.) Plaintiff's work history includes jobs as a dishwasher, bus boy, groundsman, janitor, waiter, and warehouse clerk. (Tr. 30-31.)

Plaintiff was last employed as a dishwasher/ bus boy, and worked 34 to 36 hour weeks until March of 2003. Id. Plaintiff was fired from this job after being escorted from his employer's premises by police following an altercation with a co-worker. (Tr. 32-33.) Plaintiff never applied for workers' compensation benefits, but did receive unemployment compensation benefits through October or November of 2003. (Tr. 34-35.) Plaintiff testified that he was aware that, in order to receive unemployment benefits, he had to present himself as one ready, willing and able to work. (Tr. 35.) Plaintiff further testified that he regularly sought work, and was presently looking for work. Id.

Regarding his allegedly disabling vision loss, plaintiff testified that, even with glasses, he has great difficulty seeing out of his left eye, but could see out of his right eye. (Tr. 39-40.) Plaintiff testified that his last eye exam was two years ago, at which time he was allegedly told he was "legally blind." (Tr. 40.)

Plaintiff testified that his lower back was injured in a 1993 car accident, and that he has had pain ever since. (Tr. 41.) Plaintiff saw a chiropractor and underwent therapy, but stopped

after being told there was nothing more that could be done. (Tr. 41-42.) Plaintiff testified that his lower back throbbed and hurt constantly, and that he was sometimes unable to get out of bed. (Tr. 42.) Plaintiff characterized his back pain as excruciating and throbbing pain that was either a "nine" or a "ten," and that it felt like his spinal cord was being pulled from his back. (Tr. 42.) Plaintiff suffers from excruciating back pain about three times per month, and the pain lasts at that intensity for two and a half days before it improves. (Tr. 42-43.) Plaintiff testified that his back pain constantly affects his daily life, and precludes lifting anything over 25 or 50 pounds with his right hand. (Tr. 43-44.) Plaintiff takes Motrin for his back pain, but the pills do not help the pain and cause drowsiness. (Tr. 43.) Plaintiff testified that his back pain has been like this ever since the car accident. (Tr. 43.)

Plaintiff further testified that he suffered from sharp chest pain that felt like a constant heart attack, and caused shortness of breath four days of every week. (Tr. 44.) Plaintiff testified that he takes Albuterol[3] and inhalers due to an infection in the walls of his lungs. (Tr. 45-46.) Plaintiff also testified to "tingling feelings and bad pains" in his right side that causes his whole right side to "give out." (Tr. 46.) Plaintiff testified

---

[3]Albuterol is used to prevent and treat wheezing, shortness of breath, and troubled breathing caused by asthma, chronic bronchitis, emphysema, and other lung diseases.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682145.html

that he cannot use his right side because of this, and that it happens about twice per month and lasts for one day. Id. Plaintiff used a cane at the hearing, and testified that he was prescribed a cane by a doctor at DePaul Hospital. (Tr. 48-49.) This condition has caused plaintiff to fall when getting out of bed. (Tr. 49.) Plaintiff testified that he also suffers from intense headaches that last for seven hours and occur five days per week, and also has acid reflux and fluid retention in his ankles and wrists. (Tr. 46-47; 49; 51.)

Plaintiff testified that the medication he took caused hallucinations, drowsiness, dehydration, and frequent urination. (Tr. 50-51.) Plaintiff initially testified that he last smoked cigarettes in July of the preceding year, and stopped smoking marijuana four months ago. (Tr. 52-53.) Immediately preceding the conclusion of the hearing, under questioning from the ALJ, plaintiff testified that he was given blue and green pills by a doctor to use to stop smoking cigarettes. (Tr. 68A-68B.) Plaintiff also testified that he did not stop smoking marijuana until "around the first of the year." (Tr. 68B.)

Plaintiff testified that he suffers from feelings of depression and worthlessness because he is unable to get any help and is concerned for his wife's feelings. (Tr. 54; 56.) These feelings cause plaintiff to cry for four straight days, three times per month. (Tr. 56.) Plaintiff testified that he is not seeing a psychiatrist because his doctor has not referred him to one, and

-5-

stopped taking Paroxetine[4] on March 23, 2005 because it was not helping. (Tr. 55; 57-58.) Plaintiff currently takes no medication for depression. (Tr. 58.) Plaintiff has not attempted suicide. (Tr. 57.) Plaintiff testified that he suffers from insomnia, and sleeps about four hours each night. (Tr. 66.)

Regarding his daily activities, plaintiff testified that he wakes at 4:00 a.m. every morning, makes breakfast, and takes medication. (Tr. 59.) Approximately twice per week, plaintiff walks his wife to the bus stop, located four blocks from his home. (Tr. 59; 68A.) On the way back home, he uses his cane, and must stop to use his inhaler. (Tr. 68A.) On other days, he spends the entire day sitting in one spot. (Tr. 59-60.) Plaintiff testified that he makes the bed, dusts furniture twice per week, washes some dishes, and prepares lunch and dinner, which consists of things like salad, baked chicken, string beans, and potatoes. (Tr. 61; 67-68.) Plaintiff has no trouble cooking. (Tr. 68.) When plaintiff is able, he reads the Bible. Id. Plaintiff attends church every Sunday and works as an usher at the church door. (Tr. 61-62.) Plaintiff misses church about three times annually due to health problems. (Tr. 68.) Plaintiff occasionally visits his sister, who travels to his house and picks him up. (Tr. 62.) Plaintiff accompanies his wife to the grocery store, but sits and waits while she shops. (Tr. 62.) Plaintiff's wife takes care of

_____

[4]Paroxetine is indicated for use in the treatment of depression. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a698032.html

-6-

the household bills.  <u>Id.</u>

Plaintiff testified that he was currently looking for a part-time, sit-down job that did not involve heavy lifting or a lot of walking.  (Tr. 63.)  Plaintiff testified that he could do a job that required sitting for eight hours per day.  (Tr. 63-64.)  Under questioning from his attorney, plaintiff testified that a bad headache or back pain would preclude sitting at a job for eight hours per day.  (Tr. 64.)  Plaintiff testified that he told the unemployment office that he was ready, willing and able to work, and that he thought at the time that he would be able to do full time work. (Tr. 64-65.)  Plaintiff testified that, when he applied for unemployment benefits, he was having the headaches and back pain that he had described to the ALJ.  (Tr. 65.)[5]

## III.    Medical Records

Records from Barnes Jewish Hospital indicate that plaintiff presented on January 6, 2003 with complaints of flank pain and abdominal pain, specifically in the right lower side of his stomach.  (Tr. 361; 369.)  Plaintiff was noted to have normal respirations, and reported taking no medications.  <u>Id.</u>  Plaintiff was diagnosed with a right inguinal hernia, was advised to follow up with a surgeon, and was discharged.  (Tr. 346; 370.)

---

[5]Initial review of the administrative record revealed that two pages were missing from the transcript of the April 6, 2005 administrative hearing. On February 20, 2007, this Court entered an order directing the Commissioner to submit those two pages.  (Docket No. 18.)  The Commissioner filed the two pages, numbered 68A-68B, in paper form on March 2, 2007 (<u>see</u> Docket No. 20), and those pages are incorporated into this summary of the hearing testimony.

The Barnes Jewish Hospital records further indicate that plaintiff underwent a chest x-ray on January 23, 2003, which yielded normal results. (Tr. 341.)

Records from Washington University School of Medicine indicate that plaintiff saw Dr. Robb R. Whinney, D.O., for evaluation of his right inguinal hernia on January 14, 2003. (Tr. 303; 414.) Dr. Whinney noted that plaintiff denied any current medications, and further noted that he was employed as a food server. (Tr. 414.) Plaintiff was seen next by Dr. Bradley Freeman, M.D., on February 4, 2003, who recommended that plaintiff undergo a mesh repair of his hernia. (Tr. 416-17.)[6] Plaintiff underwent a pre-operative examination, during which he reported no muscle pain or chest pain, and stated that he was taking no medications. (Tr. 303.) An ECG yielded normal results. (Tr. 334.) Plaintiff's functional status was noted as "moderate," indicating an ability to do such things as climb stairs and walk uphill. Id. Evaluation of plaintiff's lungs, heart, abdomen and extremities yielded normal. (Tr. 304.)

Dr. Whinney performed a right inguinal hernia repair on

---

[6]At the top of Dr. Freeman's office note, the date is noted as "February 4, 2002," as opposed to February 4, 2003. (Tr. 416.) However, at the bottom of the page is a stamped information block indicating the date February 4, 2003. Id. Furthermore, the date 2003 is consistent with the balance of the medical records documenting plaintiff's evaluation and treatment for his right inguinal hernia. The undersigned therefore concludes that the 2002 date is merely a typographical error. See Quaite v. Barnhart, 312 F. Supp. 2d 1195, 1199-1200 (E.D. Mo. 2004) (whether misstatement is typographical error is to be determined by reading misstatement in context of entire opinion.) The undersigned further notes that neither party challenges this error.

February 10, 2003. (Tr. 311-12; 406-407.) Plaintiff presented to Dr. Whinney for follow-up on March 11, 2003, and reported no complaints. (Tr. 298.) Dr. Whinney noted that plaintiff had a good result, and gave plaintiff a note authorizing him to return to work. Id.

On December 8, 2003, plaintiff saw Dr. Sarwath Bhattacharya, M.D. for evaluation. (Tr. 395-98.) Plaintiff complained of poor eyesight, low back pain, and a "heart condition." (Tr. 395.) Plaintiff attributed his poor eyesight to a childhood injury, following which he wore glasses for one year and then discontinued. Id. Plaintiff attributed his low back pain to a car accident, and reported seeking chiropractic treatment in the past. Id. Plaintiff denied current treatment for his back. Id. Regarding his "heart condition," plaintiff reported that he was told he had a heart attack three to four years ago, but has had no chest pain since that time, and denied taking Nitroglycerin.[7] (Tr. 396.) Plaintiff reported shortness of breath and palpitation on exertion, occasional dizziness, and swelling in his feet. Id. Plaintiff stated that he could walk two to three blocks before becoming short of breath. Id. Plaintiff reported being able to sit for two hours and stand for one hour before suffering low back pain, and stated that he could only lift 10 to 15 pounds. Id. Plaintiff reported no chest pain. (Tr. 398.)

---

[7]Nitroglycerin is used to treat chest pain.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601086.html

Upon examination, Dr. Bhattacharya noted plaintiff was in no distress, and that he had corrected vision of 20/50 on the right and 20/100 on the left, with 60 degree field vision on the left, which was noted to be "okay." (Tr. 396.) Cardiovascular exam was normal. (Tr. 397.) Plaintiff was tender to palpation in his right sacroiliac joint area with spasm in the right para-vertebral area, and also had some trace edema in his ankle area. Id. Plaintiff's gait was within normal limits, and he was able to heel-toe walk, flex all the way down and touch his toes, squat, and had a normal straight-leg raise test. Id. Plaintiff had no difficulty getting on or off the examination table. Id. Plaintiff had full range of motion of his shoulders, elbows, wrists knees, and hips, had no weakness in his legs, and exhibited 5/5 grip strength in his hands. (Tr. 397; 402.) Plaintiff had full range of motion of his cervical and lumbar spine, but experienced pain upon right straight leg raise. (Tr. 403.) An ECG was normal. (Tr. 399.) Dr. Bhattacharya's impression was impaired vision, lumbar strain, and mild ankle swelling, along with a history of shortness of breath upon exertion and sleep apnea. (Tr. 398.)

Records from St. Louis University Hospital indicate that plaintiff presented to the emergency room on January 5, 2004 with complaints of "knots" in his back and pain radiating down his right leg. (Tr. 291-92.) Plaintiff reported smoking one pack of cigarettes every four days. (Tr. 291.) Plaintiff, however, left the hospital before he could be examined or treated by a doctor.

(Tr. 289, 290.)

On January 9, 2004, Dr. Shawn C. Merys, M.D., completed a residual functional capacity ("RFC") assessment form. (Tr. 190-97.) Dr. Merys found that plaintiff's corrected visual acuity was 20/100 on the left and 20/50 on the right and that, based upon the vision in his better eye, this condition was non-severe. (Tr. 191.) Dr. Merys further found that the medical evidence did not address any chronic functional deficits from plaintiff's right inguinal hernia repair, and that condition was also non-severe. Id. Dr. Merys further found no medical evidence of a disabling heart condition, and noted that plaintiff's allegedly disabling back condition was diagnosed as merely a lumbar strain. Id. Dr. Merys opined that plaintiff had the residual functional capacity to occasionally lift 50 pounds and frequently lift 25; stand and/or walk for six hours in an eight-hour workday; and had an unlimited ability to push and/or pull. Id. Regarding postural limitations, Dr. Merys opined that, due to plaintiff's lumbar strain, he should only "occasionally" stoop and climb a ladder, rope or scaffold. (Tr. 192.) Dr. Merys did not consider plaintiff's allegations of symptoms fully credible in light of objective testing which revealed full range of motion of his lumbosacral spine, and further observed that plaintiff's pre-hernia repair surgery assessment revealed no systemic illnesses related to plaintiff's pulmonary and cardiovascular systems. (Tr. 195.)

Records from DePaul Hospital indicate that plaintiff was

-11-

admitted on July 13, 2004 with complaints of chest and back pain, chills, and a sore throat. (Tr. 263-84.) Plaintiff reported smoking one-half pack of cigarettes and denied using alcohol. (Tr. 266.) Plaintiff's blood pressure was noted as 120/76, and his heart rate was 58 beats per minute. Id. Plaintiff experienced back pain upon movement of his arm, and was tender on palpation of the upper back. Id. Plaintiff was diagnosed with bronchitis and was given a decongestant and antibiotics, and was also given Darvocet.[8] The results of both a stress test and an echocardiogram were normal. (Tr. 264; 282-83.) Chest films revealed no evidence of lung disease. (Tr. 280.) There is a notation that plaintiff was referred for physical therapy and did well. (Tr. 264.) Plaintiff was advised to stop smoking, and was discharged with no limitations on his activities. Id. Plaintiff was advised to follow up for outpatient evaluation and treatment. Id.

        Records from the Myrtle Hillard Davis Health Center("clinic") indicate that plaintiff presented for follow-up evaluation on August 12, 2004 with complaints of chest pain and breathing problems, and gave a history of his July hospital visit. (Tr. 386.) Plaintiff reported being able to walk one block before becoming short of breath. Id. Plaintiff reported taking

---

        [8]Darvocet is used to relieve mild to moderate pain.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682325.html

Levaquin,[9] Darvocet, Lisinopril,[10] and Humibid.[11] Plaintiff was diagnosed with hypertension, and his Lisinopril dosage was increased. Id. Plaintiff was further diagnosed with bronchitis and prescribed Albuterol, and was also prescribed Celebrex[12] for back pain. Id.

Plaintiff was admitted to DePaul Hospital on August 19, 2004 with complaints of sub-sternal and left-sided chest pain and mild shortness of breath, which he had experienced intermittently since the preceding day. (Tr. 238.) The DePaul "short stay note" indicates that an EKG revealed normal sinus rhythm with no acute changes, and no change from his previous EKG. Id. A thoracic CT scan was unremarkable and negative for pulmonary embolism, and myocardial infarction was ruled out. (Tr. 238, 240.) Chest x-rays revealed no acute pulmonary disease. (Tr. 242.) Plaintiff was diagnosed with atypical musculoskeletal chest pain and hypertension, and discharged on August 20, 2004. (Tr. 238-39.)

Plaintiff returned to the clinic on August 27, 2004 for

---

[9]Levaquin is used to treat infections such as pneumonia and chronic bronchitis. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a697040.html

[10]Lisinopril is used to treat hypertension. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682325.html

[11]Humibid is used to treat a non-productive cough caused by the flu and other conditions. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682492.html

[12]Celebrex is used to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused by swelling of the lining of the joints), and ankylosing spondylitis (arthritis that mainly affects the spine). http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699022.html

follow-up care. (Tr. 387.) Plaintiff described difficulty sleeping, shortness of breath, and anxiety, but reported that he had been feeling better since his recent discharge from DePaul Hospital. Id. Plaintiff's Lisinopril dosage was increased, and plaintiff was advised to begin taking Lipitor[13] to control high cholesterol. Id. Plaintiff was also prescribed Advair,[14] and was referred for a colonoscopy due to a strong family history of colon cancer. Id.

Plaintiff returned to the clinic on September 2, 2004 and reported feeling chest tightness, but stated that his sleep had improved and he was feeling better overall. (Tr. 384.) It is noted that his exam was unchanged from August 27, 2004. Id. He was continued on his asthma medications. Id. The records include a notation that plaintiff was attempting to get disability for back pain, and x-rays were taken of plaintiff's chest and lumbar spine. (Tr. 384, 390.) The chest films revealed minimal chronic obstructive pulmonary disease, and the lumbar spine films revealed lumbar scoliosis with no radiographic evidence of any other extrinsic or intrinsic abnormality of the lumbar vertebrae. (Tr. 390.) The intervertebral discs were observed to be of normal height. Id.

---

[13]Lipitor is used to reduce the amount of cholesterol in the blood. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a600045.html

[14]Advair is used to treat the symptoms of asthma. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601056.html

Plaintiff returned to the clinic on September 10, 2004 and reported continued pain and pressure that was unresolved with Ibuprofen or Celebrex. (Tr. 384.) Plaintiff's exam was unremarkable. Id. Plaintiff was prescribed Protonix.[15] Id. Plaintiff was seen again on October 8, 2004 with complaints of chest pain. (Tr. 385.) The record notes that plaintiff may have been told that his symptoms were consistent with congestive heart failure, but the clinic record indicates that the medical records from DePaul Hospital were not consistent with such an assessment. Id. Specifically, it is noted that the results of plaintiff's Echo Doppler and stress test were within normal limits, and further notes no record of edema on physical exam. Id. Plaintiff's physical exam was unremarkable, and his prescriptions for Lipitor and Protonix were refilled. Id.

Plaintiff returned to the clinic on November 18, 2004 complaining of shortness of breath while lying down. (Tr. 382.) Plaintiff reported having quit smoking, and further reported that his feet had swelled in the past week. Id. Physical exam was unremarkable, and plaintiff was advised to continue Advair and was further prescribed Lasix[16] for his reported edema. Id. Plaintiff returned to the clinic on December 9, 2004 with complaints of chest

[15]Protonix is used to treat the symptoms of gastroesophageal reflux disease, or GERD.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601246.html

[16]Lasix is used to reduce swelling and fluid retention caused by various health problems.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682858.html

pain, shortness of breath, and weakness, and further reported feeling hot and lightheaded. (Tr. 383.) He denied smoking. Id. Plaintiff's exam was normal, and he was diagnosed with sinusitis and prescribed Cipro.[17] Id. Plaintiff did not appear for his December 28, 2004 appointment, but did present to the clinic on December 29, 2004 with complaints of chest pain, musculoskeletal in nature, and sharp cramps, dehydration, lower back pain, and nasal congestion. (Tr. 381.) Plaintiff stated that he had run out of Celebrex. Id. Plaintiff's cardiovascular exam was normal. Id. Plaintiff was given a trial of Flonase,[18] and his prescriptions for Celebrex, Advair, and Lipitor were renewed. Id.

On January 18, 2005, Dr. Cynthia Brownfield completed a physical residual functional capacity questionnaire which was submitted to her by plaintiff's attorney. (Tr. 377-380.)[19] Dr. Brownfield indicated that she had seen plaintiff every two to three months for the past six months. (Tr. 377.) Dr. Brownfield diagnosed plaintiff with hypertension, chronic low back pain, mild chronic obstructive pulmonary disease and non-cardiac chest pain,

---

[17]Cipro is an antibiotic used to treat bacterial infections. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a688016.html

[18]Flonase is used to treat the symptoms of seasonal and perennial allergies. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a695002.html

[19]In his Brief in Support of the Complaint, plaintiff indicates that page five of Dr. Brownfield's January 18, 2005 report was not included in the administrative transcript. (Docket No. 14 at page 5, paragraph 11.) However, plaintiff does not argue the presence of any impairments or limitations which are not addressed in the pages of Dr. Brownfield's which are included in the administrative transcript. The undersigned therefore finds that the issue of whether one page of Dr. Brownfield's report was omitted from the administrative transcript is immaterial.

and opined that plaintiff had a "good response" to Celebrex for pain management, and that plaintiff's shortness of breath improved with the commencement of Advair. <u>Id.</u> Dr. Brownfield indicated that plaintiff's prognosis was "good." <u>Id.</u> Dr. Brownfield indicated that a chest x-ray revealed mild chronic obstructive pulmonary disease and that lumbar spine films revealed scoliosis but no evidence of disc involvement, and further noted that plaintiff had no objective findings upon examination. <u>Id.</u> In response to the question of whether plaintiff was a malingerer, Dr. Brownfield checked "No," but placed a question mark next to her response. (Tr. 378.) Dr. Brownfield indicated that plaintiff was "occasionally" incapable/capable of low stress jobs and "rarely" capable of moderate and high stress work, but she failed to indicate a rationale for those conclusions. <u>Id.</u>

Regarding plaintiff's limitations, Dr. Brownfield indicated that plaintiff frequently had pain severe enough to interfere with attention and concentration needed to perform even simple work tasks, and that he could walk only one block without pain. (Tr. 378.) Dr. Brownfield opined that plaintiff was able to sit for more than two hours at a time; stand for 45 minutes at one time; stand/walk less than two hours total during an eight hour work day; and sit for a total of at least six hours in an eight hour work day. (Tr. 378-79.) Plaintiff needed to be able to walk around every 45 minutes during the work day for 10 minutes each time, and needed to be able to shift positions at will and

occasionally take unscheduled breaks during an eight hour work day
every one to two hours to rest for 10 to 15 minutes.  (Tr. 379.)
Dr. Brownfield indicated that plaintiff was able to frequently
carry 10-20 pounds and occasionally carry 20 pounds, and rarely
carry 50 pounds.  Id.  Plaintiff was not limited in his ability to
move his head, and could "occasionally" twist, stoop, crouch, and
squat.  (Tr. 380.)  Plaintiff could rarely climb stairs or ladders,
and was likely to miss work more than four days per month.  (Tr.
378-80.)  Dr. Brownfield noted that plaintiff self-reported being
"legally blind," despite any actual history of such a condition.
(Tr. 380.)

**IV.        The ALJ's Decision**

          The ALJ found that plaintiff was not entitled to
Disability Insurance Benefits or Supplemental Security Income
payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A),
respectively, of the Social Security Act.  (Tr. 13.)  The ALJ found
that plaintiff had not engaged in substantial gainful activity
since the alleged onset of disability, and further found that,
although plaintiff had the medically determinable "severe"
impairments of lumbar scoliosis with associated back pain, mild
chronic obstructive pulmonary disease ("COPD") impaired vision, and
borderline intellectual functioning, none of these conditions were
of listing-level severity.  (Tr. 16; 22.)  The ALJ found that
plaintiff was unable to perform his past relevant work, because it

required him to lift more than 20 pounds at a time, but that plaintiff retained the residual functional capacity to perform a wide range of light exertional work.[20] (Tr. 20.) The ALJ further found that plaintiff was an individual with a limited education who was closely approaching advanced age, and found that the transferability of skills was not at issue. (Tr. 22.)

In making her RFC findings, the ALJ found that plaintiff's allegations regarding his limitations were not totally credible. Id. In so finding, the ALJ noted and discussed many factors, including plaintiff's work history, and noted that the record documented no worsening of plaintiff's condition between 2002, when plaintiff performed substantial gainful activity, and March 2003, when he alleged total disability. (Tr. 18-19.) The ALJ further noted that plaintiff claimed unemployment benefits, holding himself out as one mentally and physically ready, willing and able to work, and further noted that plaintiff was currently looking for work. (Tr. 19.) The ALJ noted and discussed plaintiff's subjective complaints and the lack of objective medical findings to support them, and analyzed the medical findings of Drs. Brownfield, Merys, and Bhattacharya. (Tr. 19-20.) The ALJ concluded that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of this

---

[20]The ALJ noted that "light work" included the ability to lift a maximum of 20 pounds; frequently lift 10 pounds, and stand/walk for six out of eight hours. (Tr. 20.)

decision.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  The ALJ then used the Medical-Vocational Guidelines ("Guidelines") to direct a finding of "not disabled."  (Tr. 21.)

## IV.  Discussion

To be eligible for Social Security disability benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Services</u>, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.  It provides disability benefits only to persons who are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  It further specifies that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A);

<u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); <u>Heckler v. Campbell</u>, 461 U.S. 458, 459-460 (1983).

To determine whether a claimant is disabled, the Commissioner utilizes a five-step evaluation process. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen</u>, 482 U.S. at 140-42. The Commissioner begins by considering the claimant's work activity. If the claimant is engaged in substantial gainful activity, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant has the residual functional capacity to perform his or her past relevant work. If so, the claimant is not disabled. If not, the burden then shifts to the Commissioner to prove that there are other jobs that exist in substantial numbers in the national economy that the claimant can perform. <u>Pearsall</u>, 274 F.3d at 1217, <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000). Absent such proof, the claimant is declared disabled and becomes entitled to disability benefits.

The Commissioner's findings are conclusive upon this

-21-

Court if they are supported by substantial evidence. 42 U.S.C. §
405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Young v.
Shalala, 52 F.3d 200 (8th Cir. 1995), citing Woolf v. Shalala, 3
F.3d 1210, 1213 (8th Cir. 1993). Substantial evidence is less than
a preponderance but enough that a reasonable person would find
adequate to support the conclusion. Briggs v. Callahan, 139 F.3d
606, 608 (8th Cir. 1998). To determine whether the Commissioner's
decision is supported by substantial evidence, the Court must
review the entire administrative record and consider:

    1.    The credibility findings made by the ALJ;

    2.    The plaintiff's vocational factors;

    3.    The medical evidence from treating and
        consulting physicians;

    4.    The plaintiff's subjective complaints
        relating to exertional and non-exertional
        activities and impairments;

    5.    Any corroboration by third parties of the
        plaintiff's impairments;

    6.    The testimony of vocational experts, when
        required, which is based upon a proper
        hypothetical question which sets forth
        the plaintiff's impairment.

Stewart v. Secretary of Health & Human Services, 957 F.2d 581, 585–
86 (8th Cir. 1992), quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85
(8th Cir. 1989).

The Court must also consider any "evidence which fairly
detracts from the ALJ's findings." Groeper v. Sullivan, 932 F.2d
1234, 1237 (8th Cir. 1991); see also Briggs, 139 F.3d at 608.

However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Briggs, 139 F.3d at 608; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992), citing Cruse, 867 F.2d at 1184.

In the case at bar, plaintiff argues that the ALJ's RFC determination is unsupported by the medical evidence of record and therefore runs afoul of the Eighth Circuit precedent established in Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001) and Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000). Plaintiff also argues that the ALJ did not fulfill her duty to fully and fairly develop the record because she failed, without giving a good reason, to order a consultative examination despite evidence of low I.Q., poor vision, and complaints of back and chest pain. Plaintiff further argues that the ALJ erroneously discredited and failed to re-contact plaintiff's treating physician, Dr. Brownfield, and finally argues that the ALJ erroneously failed to call a vocational expert despite evidence of low I.Q., poor vision, and complaints of back and chest pain. In response, defendant submits that the ALJ's decision is based upon substantial evidence on the record as a whole. The undersigned will first address the ALJ's RFC determination.

A.   RFC Determination

As set forth, supra, the ALJ in this matter determined that plaintiff could not perform his past relevant work, but retained the residual functional capacity to perform light work.

Plaintiff claims that the ALJ's RFC determination is not based upon substantial evidence on the record as a whole because, <u>inter alia</u>, the ALJ failed to provide any medical basis for the decision that plaintiff is capable of light work.

Residual functional capacity is what a claimant can do despite his limitations.  20 C.F.R. § 404.1545, <u>Lauer v. Apfel</u>, 245 F.3d 700, 703 (8th Cir. 2001).  The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations.  <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995); <u>Goff v. Barnhart</u>, 421 F.3d 785, 793 (8th Cir. 2005); 20 C.F.R. §§ 404.1545(a), 416.945(a).  A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination.  <u>Id.</u>; <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711-12 (8th Cir. 2001); <u>Lauer</u>, 245 F.3d at 703-04; <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000).  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.  <u>Hutsell</u>, 259 F.3d at 712.  The ALJ is not, however, required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance. <u>Pearsall</u>, 274 F.3d at 1217 (8th Cir. 2001); <u>McKinney</u>, 228 F.3d at 863.  The claimant bears the burden of establishing his RFC.  <u>Goff</u>, 421 F.3d at 790.

A review of the ALJ's RFC determination reveals that it was based upon substantial evidence on the record as a whole. Regarding plaintiff's mental capacity, the ALJ noted that plaintiff's I.Q. score was recorded in 1970, and that plaintiff had engaged in substantial gainful activity since that time. A condition that was present but not disabling during working years and has not worsened cannot be used to prove a present disability. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (per curiam); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). Furthermore, the ALJ considered a potential reduction in cognitive ability by limiting plaintiff to unskilled work, or the ability to understand, remember, and carry out simple one and two-step instructions. The ALJ further noted that objective medical testing revealed no findings to explain plaintiff's subjective complaints of back and chest pain. The ALJ further noted that plaintiff alleged himself to be "legally blind" despite objective testing which revealed that he had correctable vision of 20/50 in his right eye and 20/100 in his left eye with only a slightly limited field, and further noted that plaintiff testified that he was able to read the Bible. While the lack of objective medical evidence is not dispositive, it is an important factor, and the ALJ is entitled to consider the fact that there is no objective evidence to support the degree of alleged pain. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); Kisling v. Chater, 105 F.3d 1255, 1257-58 (8th Cir. 1997); Cruse, 867 F.2d at 1186, (citing Ward v. Heckler, 786 F.2d

844, 847 (8th Cir. 1986)).

The ALJ noted that plaintiff worked until 2002, underwent successful hernia repair, and was later fired for reasons unrelated to his health. The ALJ noted that the record contained no evidence supporting the conclusion that plaintiff's health deteriorated from 2002, when he was performing substantial gainful activity, and March 2003, when he alleges he became disabled. As noted above, plaintiff's low I.Q. score was recorded in 1970, following which he held several jobs. Furthermore, plaintiff testified that the pain in his low back has been like it is at present since his car accident in 1993. Neither condition prevented plaintiff from engaging in substantial gainful activity up until March of 2003. A condition that was present but not disabling during working years and has not worsened cannot be used to prove a present disability. See Orrick, 966 F.2d at 370; Dixon, 905 F.2d at 238.

Regarding plaintiff's submission of the report of his treating physician, Dr. Brownfield, the ALJ noted that the only impairments Dr. Brownfield noted which were supported by the objective findings were lumbar scoliosis without disc disease, and mild chronic obstructive pulmonary disease with shortness of breath. The ALJ particularly noted that Dr. Brownfield indicated that both of these conditions improved with the medications Celebrex and Advair. The ALJ concluded that the restrictions Dr. Brownfield imposed exceeded the limitations imposed on a person whose low back pain and shortness of breath responds to medication.

"If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) (quoting Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

The ALJ further noted that plaintiff received unemployment benefits during the time he alleged he was disabled, holding himself out as one mentally and physically capable of working. As noted, supra, plaintiff testified that he told the unemployment office that he was ready, willing and able to work, and that he thought at the time that he would be able to do full time work. (Tr. 64.) The ALJ also noted that plaintiff testified that he was currently looking for part-time, sit down work. Applying for unemployment compensation benefits, which requires certifying to the state of Missouri a mental and physical readiness, willingness, and ability to work, is inconsistent with an assertion of total disability. The Eighth Circuit has held that applying for unemployment benefits is some evidence, though not conclusive evidence, to negate a claim of disability. Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997).

The ALJ then reviewed plaintiff's medication list, and found that most of his medications were not prescribed until 2005, and that most appeared to address symptoms identified via plaintiff's subjective complaints versus objective medical findings. The ALJ noted the RFC assessment of Dr. Shawn C. Merys,

M.D., and found it to be supported by the balance of the medical evidence of record, including the observations of Dr. Sarwath Bhattacharya, M.D., following his physical examination of plaintiff on December 8, 2003 which revealed normal findings.

For her credibility findings, the ALJ specifically cited Polaski v. Heckler, 739 F.2d 1320, 1321-1322 (8th Cir. 1984) and the relevant factors therefrom.  The ALJ then noted plaintiff's somewhat erratic work history, documented by inconsistent periods of work and frequent job changes, with the exception of holding dishwasher jobs off and on from 1987 until March 2003.  A work history characterized by low earnings and long breaks in employment casts doubts upon a claimant's credibility.  Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996).

Regarding plaintiff's daily activities, the ALJ noted that, although plaintiff reported extreme limitations in his application for benefits, he reported far fewer limitations when he sought health care.  Of further note is the lack of evidence in the record that any doctor advised plaintiff to curtail his daily activities to the extent he testified he did.  An ALJ may properly discredit a claimant's testimony regarding self-limitation of physical activities when such limitations are inconsistent with medical advice.  Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003); Gill v. Barnhart, 2004 WL 1562872, *7 (8th Cir. 2004).

Regarding plaintiff's assertions of disabling shortness of breath, the ALJ noted that plaintiff, a lifetime cigarette

smoker, took no "credible steps" to stop smoking cigarettes or marijuana until just before his hearing. The ALJ found that, if plaintiff's breathing problems were truly a major concern, he would have taken steps to reduce his smoking earlier, closer to the time he alleged disability. An ALJ may properly consider a claimant's failure to quit smoking as a factor detracting from credibility. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). The ALJ also found that plaintiff's assertion that Ibuprofen caused drowsiness was not credible in light of the evidence that plaintiff ingested a number of substances, including marijuana, which would be much more likely than an over-the-counter medication like Ibuprofen to cause drowsiness.

Finally, the ALJ noted that, although plaintiff also alleged headaches and insomnia, the medical evidence of record did not indicate that he complained of or received treatment for either of these conditions. The absence of ongoing medical treatment is inconsistent with subjective complaints of pain. See Onstead v. Sullivan, 962 F.2d 803, 805 (8th Cir. 1992); See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (claimant's failure to seek medical assistance for her alleged physical and mental impairments contradicted her subject complaints of disabling conditions); McClees v. Shalala, 2 F.3d 301, 302-03 (8th Cir. 1993) (ALJ properly denied benefits to claimant who was seeking them for period during which claimant did not seek medical treatment, other than for a skinned elbow, and during which

claimant was not taking any pain medication); Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990) (ALJ properly denied benefits to claimant who had no medical evidence indicating a serious impairment during the relevant time).

Plaintiff next argues that the ALJ failed to undertake the proper analysis before discrediting the opinion of Dr. Cynthia Brownfield, plaintiff's treating physician. Ordinarily, a treating physician's opinion should not be discarded and is entitled to substantial weight. Singh, 222 F.3d 448. A treating physician's opinion will be granted controlling weight, provided it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. Singh, 222 F.3d at 452, citing Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998.) This is so because a treating source has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion is not given controlling weight, the Commissioner must look to various factors

in determining what weight to afford the opinion. <u>See</u> 20 C.F.R. § 404.1527(d). Such factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating source provides support for his findings, whether other evidence in the record is consistent with the findings, and the treating source's area of specialty. <u>Id.</u> The Regulations further provide that the Commissioner "will always give good reasons . . . for the weight [given to the] treating source's opinion." <u>Id.</u> An ALJ is entitled to discredit the opinion of a treating physician when it merely consists of vague and conclusory statements. <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 721 (8th Cir. 2001).

As discussed, <u>supra</u>, Dr. Brownfield noted that plaintiff's back pain and shortness of breath were responsive to medication, and indicated that plaintiff had a "good" prognosis. Dr. Brownfield further noted no objective findings on exam, and further appeared to question whether plaintiff was a malingerer. In this case, after evaluating the record as a whole, the ALJ declined controlling weight to Dr. Brownfield's opinion because it was internally inconsistent, and further inconsistent with plaintiff's treatment records in which there were no objective findings to explain plaintiff's subjective complaints. Although Dr. Brownfield opined that plaintiff suffered great pain and would miss work and require frequent breaks, her only objective findings were mild chronic obstructive pulmonary disease and lumbar

scoliosis, both of which improved with medication. As the Commissioner correctly notes, a physician's conclusory statement of disability without supporting evidence does not overcome substantial medical evidence supporting the Commissioner's decision. Loving v. Department of Health and Human Services, 16 F.3d 967, 971 (8th Cir. 1994); Browning, 958 F.2d at 823. Furthermore, a treating physician's opinion, although normally entitled to great weight, does not automatically control and may be discounted or even disregarded where inconsistencies undermine the credibility of such opinion. Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). The undersigned finds that the ALJ's decision to discredit Dr. Brownfield's report is supported by substantial evidence and good reasons.

Plaintiff further submits that the ALJ erred in failing to re-contact Dr. Brownfield. "While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. Goff, 421 F.3d at 791. Furthermore, the Commissioner's regulations require the ALJ to re-contact physicians when the evidence is consistent but insufficient to decide whether the claimant is disabled or, if after weighing the evidence, the ALJ is unable to decide whether the claimant is disabled. 20 C.F.R. § 416.927(c)(3).

In the instant matter, there were no undeveloped "crucial

issues" requiring the ALJ to re-contact Dr. Brownfield. As explained, _supra_, the ALJ found Dr. Brownfield's report inconsistent, and there was no issue concerning the sufficiency of the report. The ALJ, after weighing all of the relevant, credible evidence in the record as a whole, was able to determine that Dr. Brownfield's opinion did not qualify as probative evidence of plaintiff's true level of functioning. It was therefore not necessary for the ALJ to re-contact Dr. Brownfield.

Finally, plaintiff argues that the holdings in _Lauer_, 245 F.3d 700, and _Singh_, 222 F.3d 448, impose a duty upon the ALJ to produce evidence from a physician indicating that plaintiff can lift a certain weight or walk a certain distance. This argument, however, is contrary to both Agency policy concerning RFC determinations, and to Eighth Circuit precedent. Plaintiff is correct that an ALJ's decision regarding a claimant's RFC must be based upon medical evidence. _Hutsell_, 259 F.3d at 711-12. "The need for medical evidence, however, does not require the Secretary to produce additional evidence not already within the record." _Anderson_, 51 F.3d at 779. "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." _Id._, _citing_ _Naber v. Shalala_, 22 F.3d 186, 189 (8th Cir. 1994). For the reasons discussed, _supra_, the evidence in the record provided a sufficient basis for the ALJ's decision regarding plaintiff's RFC, and the ALJ was under no obligation to obtain

additional medical evidence regarding plaintiff's abilities.

A review of the ALJ's determination of plaintiff's RFC reveals that he properly exercised his discretion and acted within his statutory authority in evaluating the evidence on the record as a whole. The ALJ based his decision on all of the relevant, credible evidence of record, including the objective medical evidence and medical opinion evidence, and discredited Dr. Brownfield's opinion regarding functional limitations after conducting the proper analysis. For the foregoing reasons, the undersigned finds that the ALJ's determination of plaintiff's residual functional capacity was based upon substantial evidence on the record as a whole.

B.    Non-Exertional Impairments

Plaintiff argues that the ALJ erroneously relied upon the Guidelines and failed to call a vocational expert despite evidence in the record of low I.Q., poor vision, and complaints of chest and back pain. When an ALJ determines, as here, that a claimant is unable to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in work that exists in the national economy. Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir. 1995), citing Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992). When only exertional impairments are present, the Commissioner may meet this burden by relying on the Medical-Vocational Guidelines. Bolton v. Bowen, 814 F.2d 536, 537 n.3 (8th Cir. 1987). In the presence of non-exertional

impairments, however, the ALJ may rely upon the Guidelines only if he or she makes a finding, supported by the record, that "the non-exertional impairment does not significantly diminish Plaintiff's residual functional capacity to perform the full range of activities listed in the Guidelines." Harris, 45 F.3d at 1194, citing Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988). Absent such a finding, the Guidelines do not control, and the ALJ must call a vocational expert or produce other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's abilities. Harris, 45 F.3d at 1194; Sanders, 983 F.2d at 823; Thompson, 850 F.2d at 350. The Eighth Circuit has provided some guidance in applying this standard:

> In this context "significant" refers to whether the claimant's non-exertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude use of the Guidelines, however persistent non-exertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled. For example, an isolated headache or temporary disability will not preclude the use of the Guidelines whereas persistent migraine headaches may be sufficient to require more than the Guidelines to sustain the [Commissioners] burden.

Thompson, 850 F.2d at 350.

Pain is a non-exertional impairment. Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). "Use of the Guidelines is

appropriate if the ALJ explicitly discredits subjective allegations of pain for a legally sufficient reason, such as inconsistencies in the record." <u>Bolton</u>, 814 F.2d at 538; <u>see also</u> <u>Reynolds v. Chater</u>, 82 F.3d 254, 258-59 (8th Cir. 1996); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Cruse</u>, 867 F.2d at 1187.

In the instant matter, the ALJ found that Plaintiff could not return to his past relevant work, but had the residual functional capacity to perform a wide range of light work. As discussed in detail, <u>supra</u>, the ALJ considered plaintiff's subjective complaints of back and chest pain, and properly discredited them after conducting the proper analysis. <u>Bolton</u>, 814 F.2d at 538 (use of the Guidelines is appropriate if the ALJ explicitly discredits subjective allegations of pain for a legally sufficient reason, such as inconsistencies in the record). Similarly, as discussed in detail, <u>supra</u>, the ALJ considered plaintiff's 1970 I.Q. score, and found that it did not significantly diminish plaintiff's residual functional capacity to perform a wide range of light work. The ALJ also noted that, despite plaintiff's allegation of overwhelming depression, the record contained no evidence to support a finding of disability on the basis of depression. Plaintiff received no counseling or therapy for depression. Two months preceding the hearing, plaintiff was prescribed an antidepressant, but he stopped taking it, and his allegations that his daily activities were curtailed by depression were not supported by any evidence in the record. Also

-36-

notable is the lack of any diagnosis of depression. Regarding plaintiff's vision, the ALJ noted, as discussed, _supra_, that plaintiff's vision was correctable and did not impair his ability to read the Bible.

The undersigned concludes that in the present case the ALJ's use of the Guidelines was proper. There is substantial evidence in the record to support the determination that Plaintiff's alleged non-exertional impairments did not significantly diminish his RFC to perform a full range of light work. Considering Plaintiff's age, education, past work experience, and the ALJ's proper decision to discount Plaintiff's subjective symptoms of disabling pain, the undersigned cannot say that the ALJ erred in failing to elicit the testimony of a vocational expert. The ALJ's decision to rely upon the Guidelines and not call a vocational expert is supported by substantial evidence on the record as a whole.

Plaintiff finally argues that the ALJ erred by failing to order a consultative examination despite evidence in the record of low I.Q., poor vision, and complaints of chest and back pain.

An ALJ has the basic obligation to develop a full and fair record, even if the claimant is represented by counsel. _Battles v. Shalala_, 36 F.3d 43, 44 (8th Cir. 1994). "There is no bright line test for determining when the [Commissioner] has . . . failed to develop the record. The determination in each case must be made on a case by case basis." _Id._ at 45 (internal quotation

marks and citations omitted).  "'Unfairness or prejudice resulting from an incomplete record -- whether because of lack of counsel or lack of diligence on the ALJ's part -- requires a remand.'"  Id. at 45 n.2 (quoting Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987)).  Where evidence in the record provides a sufficient basis for the ALJ's decision, however, the failure to obtain additional medical evidence is not error.  See Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001); Naber, 22 F.3d at 189.

In this case, the evidence of record provided a sufficient basis for the ALJ's decision, and a consultative examination was unnecessary.  As discussed in detail, supra, the ALJ determined that plaintiff's alleged impairments of low I.Q. and poor vision were non-severe.  An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  The ALJ further made specific findings discrediting plaintiff's subjective complaints of chest and back pain, finding no objective medical findings to support the degree of pain he alleged, and further that his treating physician noted that his symptoms were controllable with medication.  Therefore, to the extent plaintiff argues error due to the ALJ's failure to order a consultative examination, a review of the record shows there to be sufficient evidence relating to plaintiff's impairments upon which the ALJ could determine whether such impairments rendered plaintiff disabled.  The need for an additional examination in this case was, therefore, unnecessary.

20 C.F.R. § 404.1517.

Therefore, for all of the foregoing reasons, the Commissioner's decision is supported by substantial evidence on the record as a whole. Because there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence may support a different outcome, or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning</u>, 958 F.2d at 821. Accordingly, the decision of the Commissioner in denying plaintiff's claims for benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is hereby affirmed and plaintiff's Complaint is dismissed with prejudice.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
_____
UNITED STATES MAGISTRATE JUDGE


Dated this 13th day of March, 2007.